**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA**

In re

**AMANDA ERIN ST. CLAIR and
JASON FRANK ST. CLAIR**,

Debtor.

Case No. **17-60940-7**

**MEMORANDUM OF DECISION**

At Butte in this District this 27th day of July, 2018.

In this Chapter 7[1] case Debtors request an award of damages and imposition of sanctions against Verizon Wireless, Inc. ("Verizon") for alleged violations of the automatic stay and discharge injunction ("Motion") (ECF No. 24). A hearing on the Motion was held on May 17, 2018. Debtors Amanda Erin St. Clair ("Amanda") and Jason Frank St. Clair ("Jason") each appeared and testified, represented by attorney Nik G. Geranios ("Geranios") of Missoula. Following service of the Motion on Verizon, a hearing was set, and Verizon was ordered to appear at the hearing with counsel ("Show Cause Order") (ECF No. 27). Verizon failed to appear at the hearing as ordered. Exhibits ("Ex.") 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11 were admitted at the hearing.

After Debtors' case-in-chief, Debtors' counsel was granted time to file an affidavit of attorney's fees and costs incurred in connection with the Motion. Geranios filed his affidavit of fees and costs on May 24, 2018. Verizon was granted until June 8, 2018 to object to the reasonableness of Geranios' fees and costs. Verizon did not object to the reasonableness of the

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

1

fees or costs. Following the hearing, Debtors submitted evidence of additional violations of their discharge, violations that occurred following the hearing. The Court has reviewed each of the additional violations evidenced by an email or billing statement and marked as Exs. 12, 13, and 14.

The Court has reviewed the Motion, evidence, Geranios' affidavit, and applicable law. This matter is ready for decision. Debtors' Motion is granted and Debtors are entitled to recover their actual damages including $240 in lost wages, $14 for mileage, $4 for parking, and attorney's fees in the amount of $4,882.50, for a total of $5,140.50. In addition, the Court awards Debtors punitive damages of $6,349.98 for Verizon's willful violations of the automatic stay, and $8,000 as a coercive penalty for Verizon's repeated violations of the discharge injunction, subject to increase for future violations.

## FACTS

Debtors' petition for relief under Chapter 7 of the Bankruptcy Code, along with the required Schedules and Statement of Financial Affairs, was filed on September 27, 2017. Verizon suspended Debtors' wireless services prior to the petition date because Debtors failed to pay the amounts due. As a result of the debt due to Verizon, Debtors' schedules and creditor mailing matrix included Verizon and the following address: Verizon Wireless, Bankruptcy Admin. Dept., 500 Technology Drive, Suite 550, Saint Charles, MO 63304-2225, (the "St. Charles Address").

Notice of Commencement of Case ("Commencement Notice") was sent to Verizon by first class mail at the St. Charles Address on September 29, 2017, by the Bankruptcy Noticing Center ("BNC"). Ex. 1. Debtors continued to receive monthly bills after the Commencement Notice was sent to Verizon. According to Amanda, she disregarded the first invoice she received

after the case was filed assuming that the invoices would be discontinued.[2]  Ultimately, the invoices were not discontinued and she received new invoices on December 3, 28, and 29, 2018. Ex. 2, 3 and 4.  Amanda unequivocally testified that the invoices corresponded to prepetition services and amounts due.[3]  Ex. 3 demanded payment of $1,203.43, and stated, "Urgent: Disconnect Warning!".  Ex. 4 indicated Verizon would settle the debt in exchange for payment of 90% of the balance.  It further advised that, "Verizon is entitled to report information about your account to credit bureaus[,] and that missed payments may be reflected in Debtors' credit report."

Debtors' discharge was entered January 8, 2018 (the "Discharge Order") (Ex. 5).  The Discharge Order stated, "A discharge under 11 U.S.C. § 727 is granted to Amanda Erin St. Clair [and] Jason Frank St. Clair."  Next, the Discharge Order explained:

> This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally.

*Id*.  The Discharge Order was mailed first class by the BNC to Verizon at the St. Charles Address on January 10, 2018.  *Id*.  Not long after entry of their discharge, Debtors received a letter from CBE, a collection agency, informing Jason that his Verizon account had been referred to it for collection. Ex. 6.  It indicated a total amount due of $2,636.  *Id*.  Debtors contacted Geranios after they received the collection letter from CBE.

Geranios advised CBE and Verizon that the Debtors had filed bankruptcy, and that their

---

[2] Amanda handles the family's finances and is responsible for payment of any bills or invoices received.
[3] This testimony was important because Ex. 2 shows no past due balance for the period of October 4 – November 3, and further suggests that the charges incurred between October 4 and November 3 were post-petition charges for post-petition service, which Verizon would be entitled to collect.  However, Amanda testified that the amounts due corresponded to pre-petition services, that Verizon had suspended their service, and that their new cell phone provider was T-Mobile.

3

collection actions violated the Discharge Injunction. Ex. 7. He further warned, "Should my clients receive so much as one more billing statement from Verizon via mail or email or from your collection agent, I will move to reopen the case and file suit to have both entities held in contempt of court and ask for an award of attorney's fees and all available damages." *Id*. Geranios mailed his letter to Verizon at the St. Charles Address, as well as to an additional South Carolina address that had been included in Verizon's correspondence to Debtors. The letters were not returned to Geranios due to non-delivery.[4]

Less than a month after Geranios' letter, on February 23, 2018, Verizon emailed Jason another billing statement stating an amount due of $722.04. Ex. 8. Following this email, Debtors' case was reopened and Debtors filed the Motion. Since filing the Motion and serving it on Verizon at the St. Charles Address on March 12, 2018, Debtors have received 3 additional billing statements from Verizon, on March 20, 2018 (Ex. 9), April 20, 2018 (Ex. 11), April 23, 2018 (Ex. 10). Each statement seeks to collect $722.04 from Jason.[5]

The Motion included a "Notice and Opportunity to Respond and Request Hearing" (the "Notice") consistent with Mont. LBR 9013-1(e). The Notice explains that, "If no objections are timely filed, the Court may grant the relief requested, as a failure to respond by any entity shall be deemed an admission that the relief requested should be granted." The Motion was served on Verizon at the St. Charles Address (*See* COS at ECF No. 24). Verizon did not respond to Debtors' Motion within the notice period.

Although the Court could have construed Verizon's failure to respond as an admission that the relief requested should be granted under Mont. LBR 9013-1(f), instead it set a hearing for May 17, 2018. The Order setting the hearing specifically stated:

---

[4] CBE discontinued all collection activity and did not contact Debtors after receiving Geranios' letter.
[5] The letters and invoices are not addressed to Amanda, only to Jason.

4

> The Court deems it appropriate to schedule a hearing on Debtors' Motion to hold Verizon in contempt so that the Debtors may offer evidence to satisfy their burden of proof for contempt and establish appropriate sanctions. The Court finds that holding the hearing on May 17, 2018, affords Verizon and its counsel reasonable time to prepare for the hearing on contempt.

Show Cause Order.  The Show Cause Order was served on Verizon at the St. Charles address. ECF No. 28.  Verizon did not appear at the hearing on May 17, 2018.   At the hearing the Debtors testified that Verizon's ongoing collection activities have resulted in additional stress on Amanda.  Jason testified that he is angry that Verizon has failed to discontinue the monthly invoices by mail and email.

Following the hearing, Debtors filed an affidavit of attorney's fees, including itemized billing records, showing total fees of $4,882.50 incurred at a rate of $225 per hour.  ECF No. 40. Also shortly after the hearing, Verizon sent Jason another email seeking to collect $722.04.  ECF No. 37, Ex. 12.  On June 6, 2018, an invoice was received in the mail from Verizon requesting $722.04.  ECF No. 39, Ex. 13.  Shortly thereafter, Jason received a request for payment from a new collection agency, North Shore Agency, attempting to collect $722.04.  *Id*, Ex. 14.

Amanda missed 14 hours of work in connection with meetings with Geranios preparing and filing the Motion, and attending the hearing.  Amanda's hourly rate is $17 per hour.  Jason missed 16 hours of work.  His hourly rate is $15 per hour.  Debtors incurred $4 in parking costs for attending the show cause hearing, and incurred mileage costs of a total of 40 miles for meetings and the hearing at $.35 per mile, or $14 for mileage.

## DISCUSSION

Debtors request relief pursuant to §§ 105(a), 362 et seq. and 524(a)(2).  Debtors' claims for relief stem from Verizon's violations of automatic stay under § 362(a); and, (ii) violations of the discharge injunction that arises under § 524(a)(2).  These issues were addressed in part by

this Court in *In re Lewis*,[6] a case in which the debtor showed that following the entry of her discharge, Verizon sought to collect a discharged debt on at least 10 separate occasions.  In addition to awarding compensatory damages, this Court in *Lewis* imposed a civil penalty of $500.00 per violation of the discharge injunction, ($5,000).  Less than a year after its decision in *Lewis*, evidence of precisely the same conduct by Verizon has been presented in this case, suggesting that the Court's imposition of a $5,000 penalty was inadequate.  Unlike *Lewis*, this case also involves violations of the automatic stay by Verizon.  The Court will consider the violations of the automatic stay and the discharge injunction independently, and then address Debtors' request for damages and other relief.

    I.        Automatic Stay Violations

"When a debtor files for bankruptcy, the Bankruptcy Code imposes an automatic stay on virtually all actions against the debtor to collect pre-petition debts." *America's Servicing Co. v. Schwartz–Tallard* (*In re Schwartz–Tallard*), 803 F.3d 1095 at 1096 (9th Cir. 2015) (en banc) (citing 11 U.S.C. § 362).  The scope of the stay has been described as:

> The automatic stay sweeps broadly, enjoining the commencement or continuation of any judicial, administrative, or other proceedings against the debtor, enforcement of prior judgments, perfection of liens, and any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case.

*In re Gruntz*, 202 F.3d 1074, 1081–82 (9th Cir.2000) (internal citations omitted).  Thus, the automatic stay in this case arose on September 27, 2017.  The automatic stay remained in effect until entry of Debtors' discharge on January 8, 2018.  § 362(c)(2)(C).  Thus, efforts by Verizon, to collect the pre-petition debt that occurred between September 27, 2017 and January 8, 2018, would constitute a violation of the automatic stay.  At a minimum, Verizon made 3 attempts to

---

[6] At Debtors' request, the Court has taken judicial notice of separate proceedings before it, *In re Lewis*, 2017 WL 1233816 (Bankr. D. Mont.).  In *Lewis*, the Court awarded debtor actual damages and imposed a coercive penalty on Verizon for its violation of Debtors' discharge.

collect the debt on December 3, 28, and 29, 2017.  *See* Ex. 2, 3, and 4.

Section 362(k) provides:

> [A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages.

*In re Snowden*, 769 F.3d 651, 658 (9th Cir. 2014); *Leetien, P.C., v. Roman (In re Roman),* 283 B.R. 1, 9 (9th Cir. BAP 2002).  In its application of § 362(k), this Court has consistently considered whether the creditor knew of the stay, and if the creditor's actions in violation of the stay were intentional.  *Roman*, 283 B.R. at 8; *Knupfer v. Lindblade* (*In re Dyer*), 322 F.3d 1178, 1191 (9th Cir.2003).

A party with knowledge of bankruptcy proceedings is charged with knowledge of the automatic stay.  *Dyer*, 322 F.3d at 1191.  Further, "once a creditor or actor learns or is put on notice of a bankruptcy filing, any actions intentionally taken thereafter are 'willful' within the contemplation of § 362(k)."  *In re Risner*, 317 B.R. 830, 835 (Bankr. D. Idaho 2004).  Notice of a bankruptcy filing is ordinarily accomplished using the U.S. Postal Service, and "mail that is properly addressed, stamped and deposited into the mails is presumed to be received by the addressee." *Moody v. Bucknum (In re Bucknum)*, 951 F.2d 204, 207 (9th Cir.1991).  A certificate of mailing raises the presumption that the documents sent were properly mailed and received.  *Id*.

The Commencement Notice was served on Verizon at the St. Charles Address, as evidenced by Ex. 1.  Nothing in the record rebuts the presumption of receipt by Verizon.[7]  Absent any evidence to rebut the presumption, this Court must conclude that Verizon received notice of the bankruptcy prior to its December 2017 collection efforts.  As a result, Verizon had

---

[7] By failing to appear at the Show Cause Hearing as ordered, Verizon waived its opportunity to present evidence or otherwise respond to the Motion.

7

knowledge of the automatic stay.  Further, for purposes of § 362(k), its collection efforts in December 2017, constitute 3 separate willful violations of the automatic stay.  Although Debtors have collectively sought relief, ultimately, Jason was the only party liable for the debt and Jason was the only debtor identified on the billing statements.  As a result, Jason is entitled to damages for violations of the automatic stay.

II.     Discharge Injunction Violations

A debtor's discharge, "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]" 11 U.S.C. § 524(a)(2).  A party who knowingly violates the discharge injunction can be held in contempt under § 105(a) of the bankruptcy code.  *In re ZiLOG, Inc.,* 450 F.3d 996, 1007 (9th Cir. 2006).  To establish a violation of the discharge injunction was knowingly and willfully committed: "the movant must prove that the creditor, (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction." *Id*.

The relationship between "knowingly" and "willfully" under this standard has been explained as:

> [T]he Ninth Circuit has crafted a strict standard for the actual knowledge requirement in the context of contempt before a finding of willfulness can be made. This standard requires evidence showing the alleged contemnor was aware of the discharge injunction and aware that it applied to his or her claim. Whether a party is aware that the discharge injunction is applicable to his or her claim is a fact-based inquiry which implicates a party's subjective belief, even an unreasonable one. Of course, subjective self-serving testimony may not be enough to rebut actual knowledge when the undisputed facts show otherwise.

*Emmert v. Taggart (In re Taggart)*, 548 B.R. 275, 288 (9th Cir. BAP 2016), *aff'd*, 888 F.3d 438, 444-45 (9th Cir.2018).[8]  It further notes parallels between the analysis under §§ 524(a)(2) and

---

[8] This BAP decision was recently affirmed by the 9th Circuit.  See *Lorenzen v. Taggert (In re Taggert)*, 888 F.3d

8

362(k):

> the analysis concerning a willful" violation of the discharge injunction is the same as a finding of willfulness in connection with violation of the automatic stay under § 362(k). In connection with the second prong's intent requirement, we have previously observed that "the bankruptcy court's focus is not on the offending party's subjective beliefs or intent, but on whether the party's conduct in fact complied with the order at issue.

*Id*.

Since Verizon did not attend the hearing, introduce evidence or otherwise defend against Debtors' Motion, the Court is compelled to find and conclude that Verizon had knowledge of the entry of Jason's discharge and knew that its claim was subject to the discharge. First, Debtors included Verizon on Schedule G, and set forth the basis of any claim Verizon had against Jason. Next, the Commencement Notice was sent to Verizon at the St. Charles Address by the BNC. Similarly, the Order granting Debtors' Discharge was mailed to Verizon at the St. Charles Address by the BNC. There is nothing in the record to rebut the presumption that Verizon received notice of the case, its claim, or Debtors' discharge. Thus, the presumption of receipt combined with the information associated with those documents, and in the absence of any contrary evidence, this Court concludes that Verizon had actual knowledge of the discharge, and that its claim against Jason was subject to the discharge injunction.

Following entry of the discharge injunction, Verizon attempted to collect its prepetition debt from Jason on at least 8 separate occasions: January 24, letter from CBE Group (Ex. 6); February 23, email statement (Ex. 8); March 20, Billing Statement (Ex. 9); April 20, Billing Statement (Ex. 10); April 23, email statement (Ex. 11); May 20, Billing Statement; May 20, Billing Statement (Ex. 13); May 23, email statement (Ex. 12); and, the May 30, North Shore letter (Ex. 14). None of the evidence shows that Verizon contacted Amanda or sought to collect

---

438, 444 (9th Cir. 2018).

the debt from Amanda.  All correspondence from Verizon was addressed to Jason.

These attempts to collect the prepetition debt do not comply with the Court's Order granting Jason's Discharge.  The Order specifically explains that no one may make any attempt to collect a discharged debt from the debtors personally and cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally.  Verizon's actions violated the Discharge Order.  Further, the recurring nature of the violations followed by referral to a new collection agency, North Shore, demonstrate Verizon's conduct was intentional.  Jason established that Verizon violated the discharge injunction.

### III.    Damages

Verizon's efforts to collect a prepetition debt after receiving the Commencement Notice violated the automatic stay and Jason is entitled to damages.  Debtors have requested "compensatory damages, a coercive fine, [and] emotional distress damages."  As a result of Verizon's violations of the automatic stay Jason is entitled to recover his actual damages.  11 U.S.C. § 362(k).  Actual damages include costs and attorney's fees.  "For these reasons, § 362(k) is best read as authorizing an award of attorney's fees incurred in prosecuting an action for damages under the statute."  *In re Schwartz–Tallard*, 803 F.3d at 1097, 1101.  A debtor may also be awarded emotional distress damages for an automatic stay violation.  *In re Dawson*, 390 F.3d 1139 (9th Cir.2004).  If it is shown that "reckless or callous disregard for the law or rights of others" led to the automatic stay violation, punitive damages may also be awarded.  *In re Bloom*, 875 F.2d 224, 228 (9th Cir. 1989).

Debtors introduced evidence showing that their actual damages, excluding attorney's fees and costs, were $496 ($478 in lost wages, $14 for mileage, and $4 for parking).  However, as noted, Verizon did not attempt to collect a prepetition debt from Amanda, its violations of the

automatic stay solely relate to Jason. Although the Court appreciates that the family operates as a unit, it cannot conclude that it was necessary for Amanda to miss work to attend the hearing, or meetings with counsel, and will not award her lost wages as a component of Jason's actual damages. As a result, $238 of the $478 in lost wages is disallowed. The Geranios Affidavit sets forth attorney fees of $4,882.50 related to Verizon's violation. Here, Geranios' fees were reasonable and necessary for addressing Verizon's conduct. Thus, Debtors' actual damages are $5,140.50.

In addition to actual damages, damages for emotional distress may be awarded if the debtor, "(1) suffer[s] significant harm, (2) clearly establish[es] the significant harm, and (3) demonstrate[s] a causal connection between that significant harm and the violation of the automatic stay (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process)." *Dawson*, 390 F.3d at 1149. Although Debtors testified that the automatic stay violations caused Amanda anxiety and stress, which made Jason angry, Debtors did not establish that they had experienced significant harm. As a result, an award of additional damages for emotional distress is not warranted in this case.

Debtors have requested an award of punitive damages. At a minimum Verizon was reckless, following its receipt of the Commencement Notice, in failing to discontinue its regularly scheduled billing of Jason. Verizon's collection efforts that violated the automatic stay included 3 billing statements for $768.13, $1,203.43, and $1,203.43, respectively. The total of these amounts is $3,174.99. Punitive damages that are twice this amount are awarded to Jason. Jason is awarded $6,349.98 in punitive damages.

Verizon's efforts to collect a prepetition debt after entry of Debtors' discharge violated the Discharge Order as it related to Jason. Jason is entitled to damages as a result of Verizon's

disregard for the Discharge Order and Jason's discharge under § 524.  Verizon has demonstrated a cavalier approach in this case to the automatic stay, the Discharge Order, and most recently, the Show Cause Order.  Indeed, it appears that Verizon's contempt is ongoing, given the most recent violation of the Discharge Order occurred after the hearing.

Violations under § 524(a) are enforced through the bankruptcy court's contempt authority under § 105(a). *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002).  However, this Court's authority under § 105(a), is limited to "civil contempt authority and allows only for civil sanctions as the appropriate remedy." *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1192 (9th Cir. 2003).  Although limited, the Court may award compensatory damages, attorneys fees, and coerce the contemptuous party into compliance with civil penalties.  *See Walls v. Wells Fargo Bank*, 276 F.3d 502, 507 (9th Cir. 2002).  As a result of the automatic stay violations, Debtors were awarded compensatory damages, including their attorney's fees.  As a result, this Court must determine whether there is any coercive measure that will ensure Verizon's compliance with § 524(a).

In *Lewis*, along with actual damages, this Court imposed a fine or penalty of $500 per violation on Verizon, and there were 10 violations.  A court may take judicial notice of other court proceedings.  Prior to doing so, this Court took considered 3 others cases in which Verizon had been held in contempt or otherwise sanctioned for automatic stay and discharge violations.[9]  The similarities between those cases case, this case and *Lewis* suggest to this Court that $500 per violation was simply insufficient for coercing Verizon to scrutinize its practices and implement

---

[9] *See In re Blake*, 452 B.R.1 (Bankr. Mass. 2011), *In re Anthony Stewart*, 08-15643-JNF, (Bankr. Mass. 2010), and *In re McKee*, 13-04113 (Bankr. E.D.N.C. 2013).  These cases demonstrated a range of outcomes including: a settlement between debtor and Verizon for $20,000; a judgment for $1,000 in actual damages, $1,000 in punitive damages for each communication—$25,000 total; and, $5,000 actual damages, $2,500 in attorney fees, and punitive damages in the amount of $5,000.

12

appropriate measures that avoid violations of the automatic stay and discharge injunction. As a result, in this case the Court is going to impose a fine or penalty of $1,000 per violation for a total of $8,000. An additional penalty of $1,000 per violation will be imposed if Verizon continues to violate Debtors' discharge. Debtors are authorized to request additional fines and attorney's fees if Verizon continues its violations.

## CONCLUSION

There is simply no excuse for Verizon's conduct in this case, and perhaps that is why Verizon chose not to attend the hearing, or defend the Motion. Verizon shall pay the following amounts to Jason St. Clair: (a) actual damages of $5,140.50; (b) punitive damages of $6,349.98; and, (c) a coercive fine or penalty of $8,000, (subject to increase $1,000 per future violation). Verizon shall retain counsel and file with this Court a notice within 30 days of the date of this Order that affirmatively represents that it: (i) has tendered payment to Jason St. Clair in the total amount of all damages and the fine, $19,490.48, to Debtors via their counsel; (ii) has taken all necessary steps to ensure that Jason St. Clair will not receive another invoice for prepetition services that correspond to the pre-petition debt in violation of the discharge; (iii) that Verizon has advised its agents and third-parties to cease and desist all efforts to collect any prepetition debt from Jason St. Clair; and, (iv) that Verizon has submitted all appropriate information to any third-party credit reporting entity, so that the prepetition debt is reported accurately. Absent timely filing of the Notice required herein, Verizon shall be subject to an Order to Show Cause to be issued by the Court.

**IT IS ORDERED** a separate Judgment shall be entered in the above-captioned Chapter 7 case against Verizon Wireless, Inc., in the amount of $19,490.48 in favor of the above-named Debtor Jason Frank St. Clair.

**IT IS FURTHER ORDERED** and **NOTICE IS HEREBY GIVEN** that Verizon shall file the Notice required herein on or before **August 27, 2018**, and if it fails to do so, the Court shall issue a further Order to Show Cause for Verizon's ongoing contempt.

BY THE COURT:

/s/ Benjamin P. Hursh

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana